**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 7th day of March, 2013.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**AARON GRANT BUERGE,**  Case No. 11-20325
         **Debtor.**  Chapter 7

_____

**MEMORANDUM OPINION AND ORDER
ON JOINT MOTION FOR STAY OF JUDGMENT AND
JOINT MOTION FOR RELIEF FROM JUDGMENT**

**Background**

The Chapter 7 Trustee, Eric C. Rajala ("Trustee"), and Prime Lending II, LLC ("Prime"), have jointly moved for stay pending appeal[1] of the Bankruptcy Court's September 6, 2012, judgment granting the Debtor's motion to compel the Trustee to abandon stock and denying the Trustee's motion to sell stock to Prime.[2] The Trustee and Prime have also jointly moved for relief from that judgment under Federal Rule of Civil Procedure 60(b)(2), (3) and (6),[3] alleging

---
[1] Doc. No. 220.
[2] The Trustee and Prime are also referred to herein as "Joint Movants."
[3] Doc. No. 221. References to sections in the Federal Rules of Civil Procedure are referred to as "Rule."
All other statutory references are to Title 11 of the United States Code, the "Bankruptcy Code."

newly discovered evidence and fraud by the Debtor. Joint Movants appealed the judgment, and that appeal is pending before the Bankruptcy Appellate Panel for the 10th Circuit.

The standards for the bankruptcy court for assessing a Rule 60(b) motion and a motion for stay of judgment pending appeal are discussed below.

**I.     Joint Motion for Relief from Judgment under Rule 60(b).**

    **A.     Standards of Law.**

A motion for relief from judgment is governed by Rule 60.[4] The Trustee and Prime seek relief from judgment under Rule 60(b), specifically, under subsections (b)(2), (b)(3), and (b)(6). Rule 60(b) states:

> (b)     Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
> . . . .
> (2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> . . . .
> (6)     any other reason that justifies relief.

A motion under Rule 60(b) must be filed "within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." The Rule 60(b) motion, however, does not itself affect the underlying order's finality or suspend its operation.

When an appeal of a final order divests the trial court of jurisdiction over that order, the proper procedure for a movant seeking Rule 60 relief is to ask the trial court to issue a ruling

---

[4] Rule 60 is applicable in bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9024.

under Rule 62.1.[5] Under Rule 62.1(a), "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."[6] The bankruptcy court can, therefore, proceed to consider the Rule 60(b) motion, as long as it issues its order on the Rule 60(b) motion under the strictures of Rule 62.1(a).[7]

The focus of Rule 60(b) relief is to balance "the desire to preserve the finality of judgments" against the requirement "that justice be done in light of *all* the facts."[8] "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."[9] The moving party under Rule 60(b) bears the burden of demonstrating that it satisfies the prerequisites for relief.[10] The matter is left to the discretion of the bankruptcy court.[11]

Regarding Rule 60(b)(2), for newly discovered evidence to warrant relief the moving party must show: "(1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be

---

[5] Rule 62.1 is a 2009 addition to the Federal Rules of Civil Procedure, effective December 1, 2009. Example cases using the Rule 62.1 indicative ruling procedure are: *Raley v. Hyundai Motor Co. Ltd.*, 642 F.3d 1271, 1274 (10th Cir. 2011) (district court obtained leave to modify its judgment from the Tenth Circuit using Rule 62.1 after noticing clerical error in the judgment); *McDonald v. OneWest Bank, FSB*, Case No. 10-cv-01749-RPM, 2011 WL 6012511, at *3 (D. Colo. Dec. 1, 2011) (applying Rule 62.1 to deny a Rule 60(b) motion of an order on appeal).

[6] Under Rule 62.1(b), the movant under this rule must "promptly" notify the appellate court only if the trial court decides that it will proceed under Rule 62.1(a)(3).

[7] The Joint Movants also asked the BAP to either summarily remand for reconsideration by the Bankruptcy Court or stay the appeal and allow the Bankruptcy Court to rule on the joint motion. In response, that court issued an order in *In re Buerge*, KS-12-074 (B.A.P. 10th Cir. Jan. 8, 2013).

[8] *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (quoting *Seven Elves, Inc., v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981)) (internal quotations omitted).

[9] *Id.*

[10] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[11] *Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp., Inc.*, 837 F.2d 423, 426 (10th Cir.1988) ("A motion to vacate judgment under Rule 60(b) is left almost entirely up to the discretion of the trial court.").

merely cumulative or impeaching; (4) the newly discovered evidence [is] material; and (5) that a new trial[] with the newly discovered evidence would probably produce a different result."[12]

Regarding Rule 60(b)(3), relief based on fraud, misrepresentation, or misconduct by an opposing party, the Tenth Circuit has stated that "before retrial is mandated under Rule 60(b)(3) in consequence of discovery misconduct, the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial."[13]

Regarding Rule 60(b)(6), relief based on "any other reason that justifies relief," the bankruptcy court has the power to vacate a judgment under this subsection "whenever such action is appropriate to accomplish justice."[14] Rule 60(b)(6) relief is narrower than the text of the Rule may imply. A party must show "extraordinary circumstances" to justify reopening a final judgment under Rule 60(b)(6).[15] The Supreme Court has held that Rule 60(b)(6) is mutually exclusive of the other subsections of Rule 60(b).[16] Therefore, because the Joint Movants here have sought relief under Rule 60(b)(2) and (b)(3), without arguing a separate basis under (b)(6), there is no need to consider or analyze Rule 60(b)(6).

**B.     Analysis.**

The Trustee and Prime, as Joint Movants, carry the burden of persuasion for their Rule 60(b) motion.

Regarding Rule 60(b)(2), relief based on newly discovered evidence, the Trustee and Prime argue that throughout trial, the Debtor contended that the stock at issue—stock in two

---

[12] *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005) (quoting *Graham v. Wyeth Lab.,* 906 F.2d 1399, 1416 (10th Cir. 1990)) (internal quotations omitted).

[13] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 924 (1988)) (emphasis in original) (internal quotations omitted).

[14] *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949).

[15] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).

[16] *See id.* (concluding that Rule 60(b)'s provisions are "mutually exclusive").

bank holding companies, Buerge Bancshares, Inc. ("BBI") and Financial Enterprises, Inc. ("FEI")—had little or no value. Joint Movants assert that the Debtor, therefore, argued at trial that the stock should be abandoned by the Trustee, rather than sold to Prime by the Trustee.[17] However, this Court did not hold that the gross value of the stock was inconsequential; what the Court held is that Prime's offer to purchase the stock, after payment of encumbrances, costs and fees, would generate an inconsequential dividend of $27,000 to pay on approximately $3 million in unsecured claims. This net payment rendered the asset of inconsequential value to the estate. As the hearing proceeded, the sale became increasingly complicated, and the inconsequential net value to unsecured claimants did not justify the incurrence of more risk and delay by the estate. Prime's proposed purchase price of the Debtor's stock, which increased with the accrual of post-petition interest, allowable attorneys' fees and costs, and additional costs to the estate, did not justify approval of a transaction that would provide a pittance to pay toward unsecured claims. While the Court considered other factors pertinent to the sale, the increasingly complicated sale transaction,[18] the risk to the estate, and a pitiful distribution to unsecured creditors were important considerations for the Court's ruling that the sale should not be approved and that the stock should be abandoned to the Debtor.

The Court's judgment of September 6, 2012, based on facts presented at a three-day trial beginning on July 11, 2012, concluded that the Trustee had not carried his burden to prove a

---

[17] As a clarification, the Court in its decision states that a representative of Prime neither appeared or testified at the hearing; although Kevan Acord did appear at the hearing on this matter, he appeared as a representative of Prime, the fictitious entity, and not as representative of the seven purchasers. Regardless, Acord did not testify at the hearing.

[18] Indeed, during the course of the three-day hearing there was indication by Prime and the Trustee that additional amendments to the purchase agreement were necessary, as well as the possibility for a legal opinion letter issued by a securities attorney. Instead of a relatively quick liquidation of the estate's interest in the encumbered stock, the facts establish an increasingly complex transaction.

- 5 -
13.03.07 Buerge Stay Order.wpd
Case 11-20325   Doc# 243   Filed 03/07/13   Page 5 of 16

sound business reason for the sale (because of the high costs of sale with only a *de minimis* net return), a fair sale price (because Prime's offer was the Trustee's only indication of price due to failure to solicit other bids), and the buyer was a good faith purchaser (because the proposed sale was not for fair value and there was no arm's length negotiation). The judgment concluded that the Trustee did show adequate and reasonable notice of the sale and that no other bidders or sales interest beyond the creditor matrix had been pursued. Ultimately, this Court concluded that the proposed sale was not based on sound business judgment. Regarding abandonment, the judgment granted the Debtor's motion to abandon based generally on these same facts and because the evidence failed to show that the stock's value was consequential to the estate.

A month after the Bankruptcy Court's decision, on October 9, 2012, the Joint Movants allegedly learned that the primary asset of BBI, the stock of the First State Bank of Joplin, was being sold to Pinnacle Bank. The terms of the sale are unknown. The Sheshunoff & Co. firm, an investment banking company ("Sheshunoff"), issued a press release announcing the sale and advising that it had represented the First State Bank of Joplin in the transaction. When Justin Buerge, president of BBI and the Debtor's brother, was asked in his pre-trial deposition about a value analysis by Sheshunoff of the First State Bank of Joplin, Justin Buerge stated that no one had asked Sheshunoff to prepare the document. The Joint Movants allege that the pending sale of the First State Bank of Joplin stock and the hiring of Sheshunoff were not disclosed to the Trustee, who, as representative of the estate, was an 11 percent shareholder of BBI, the entity that wholly-owned the First State Bank of Joplin. However, at the time of the post-trial transaction, the Court had ordered abandonment of the stock to the Debtor. Prior to abandonment, the Debtor notified the Trustee of the dates, times and locations of board meetings. The Trustee did not attend any of these meetings. The Joint Movants did not file a

- 6 -

13.03.07 Buerge Stay Order.wpd
Case 11-20325    Doc# 243    Filed 03/07/13    Page 6 of 16

joint motion for stay of execution until December 12, 2012, after the sale of the BBI stock had occurred. It was the Debtor's prerogative to participate in such sale as the owner of the BBI stock since, even though it had been appealed, the Court's Judgment was final.[19]

The Joint Movants argue that they were prejudiced in their prosecution of the motion to sell and in their defense of the Debtor's motion to abandon. The Joint Movants allege that undisclosed facts were not discovered until October 9, 2012, and could not have been discovered earlier because Justin Buerge's deposition testimony regarding Sheshunoff was, at best, incomplete and misleading. However, the Court provided ample time for discovery to be conducted by the parties. At trial, Prime had an opportunity to examine the Debtor, his father (Alden Buerge) and his brother (Justin) with regard to Sheshunoff's valuations, pending contacts and possible sales.[20] Prime failed to do so. Obviously, the post-trial sale could not have been discovered prior to the Court hearing the matter. Joint Movants argue that although it was concluded after the hearing, that information regarding a planned sale of the stock may not have been disclosed. However, this information was not material and would not have produced a different result since all that was before the Court was Prime's proposed purchase of the stock, and this proposed purchase was not tied to the value of the stock. The post-trial sale of the stock does not raise any evidence that the Debtor knew of a pending sale at the time of the hearing before this Court. This Court had the opportunity to observe the Debtor's testimony and demeanor in this and various other hearings, and it is this Court's unequivocal conclusion that the Debtor's testimony was truthful and credible. Alden Buerge's testimony was also credible.

---

[19] "A party who desires to appeal is not obliged to seek a stay of the judgment pending appeal. However, if no stay is in effect, the prevailing party may treat the judgment of the bankruptcy court as final, notwithstanding that an appeal is pending." *See* 10 COLLIER ON BANKRUPTCY ¶ 8005.01 at 8005-2 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012).

[20] Justin Buerge did not testify at trial and Joint Movants did not subpoena him.

At the heart of the joint motion is that the Court would have reached different conclusions with regard to valuation and abandonment if the alleged newly discovered evidence were presented at trial. To the contrary, it is this Court's observation that neither the Trustee nor Prime undertook any efforts to perform valuations of the stock and did not have their own witness testify at the trial as to valuation. As was previously noted, Kevan Acord was present for the trial, but did not testify. It was the decision of the Joint Movants not to have a witness testify regarding the important considerations of good faith, valuation of the stock, and whether the stock was ultimately of consequential value to the bankruptcy estate. Whatever the strategic reasons for this decision, Prime and the Trustee must live with this vacuum of evidence. Prime's offer to purchase the stock was not tied to valuation. Prime's monetarily ascending offer was calculated to pay off liens that encumbered the stock, necessary fees and costs related to the sale, including the Chapter 7 Trustee's fees and secured lender's attorney's fees, and to leave a net distribution to unsecured claimants of approximately $27,000.

It seems inconsistent that the focus of Prime and the Trustee's Rule 60(b) requests pertains to valuation of the stock, when the basis for Prime's calculation of its purchase price was not tied to the value of the BBI stock, but was based upon a calculation to pay as little as possible for the stock. With respect to abandonment, at the end of the day the stock is only of consequential value if Prime were willing to pay a sufficient amount that would generate a consequential distribution to unsecured claimants; this is something which Prime had ample time to accomplish, but failed to do. Prime's offer was presented to this Court as the only offer to purchase the stock, and the Trustee did not carry his burden of proof for this Court to approve the sale. The evidence did establish that, after this lengthy process, the stock was of inconsequential value to the bankruptcy estate.

To prevail under Rule 60(b)(2), the Trustee and Prime have the burden to show that (1) the evidence was newly discovered since the trial; (2) the Trustee and Prime were diligent in discovering the new evidence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) a new trial with the newly discovered evidence will probably produce a different result.

Aside from the fact that the alleged newly discovered evidence may only be useful in an attempt to impeach testimony under the third factor, the Trustee and Prime's biggest hurdles are the fourth factor (whether the newly discovered evidence is material) and the fifth factor (whether a new trial with the newly discovered evidence would probably produce a different result). As discussed above, the ultimate sale of the BBI stock interest is not sufficiently material. The Joint Movants focus on Alden Buerge's testimony regarding the family business nature of the two bank holding companies. However, Alden Buerge also testified that the year 2011 was "a tough one" in that he was diagnosed with cancer, and there was catastrophic destruction in Joplin, Missouri, from a tornado.[21] Another impetus to the sale of stock held in BBI during 2012 was the five percent increase to the long-term capital gains tax that was effective January 1, 2013. The purchase was one of two made by Pinnacle prior to the end of 2012.[22]

Assuming *arguendo* that when Alden Buerge testified it was his intention to sell his BBI stock during 2012, then this evidence would not have been material to this Court's decision. Prime engaged in procedural machinations wherein the purchase price increased only in a sufficient amount to insure a net dividend to unsecured claimants in the approximate sum of

---

[21] The stock held in BBI is for the First State Bank of Joplin.
[22] Doc. No. 220, Exhibit B.

$27,000. The Trustee and Prime had an opportunity to provide information regarding valuation of the stock and failed to do so. The burden ultimately rested with the Trustee, and he failed to carry this burden. In its decision, this Court understood that the stock may in fact have value in excess of the offer made by Prime; the disconnect is that Prime's purchase price was never tied to the value of the stock. To determine whether the sale should be approved, and the stock ultimately abandoned, this Court considered Prime's proposed purchase price and the attendant monetary benefit and risk to the estate. The alleged newly discovered evidence would not have produced a different result at trial.

Regarding Rule 60(b)(3), relief based on fraud, the Trustee and Prime argue that the answers provided by BBI in discovery were incomplete and that facts material to the Court's analysis were missing. The Trustee and Prime argue, therefore, that the fairness and integrity of the judicial process requires relief.

To prevail under Rule 60(b)(3), the Trustee and Prime have the burden to show that the failure to disclose the alleged preparations for the sale of the First State Bank of Joplin substantially interfered with the Joint Movants' ability to fully and fairly prepare for and proceed at trial. The Trustee and Prime have not carried their burdens. The Joint Movants do not make any argument, let alone a persuasive argument, for fraud on the part of the Debtor and rely only on general assertions that they would have prepared for trial differently. The Joint Movants do not provide enough support in this section of their motion.

The Joint Movants have not carried their burdens to show that they are entitled to relief from the Bankruptcy Court's final judgment under Rule 60(b)(2), (b)(3) or (b)(6). This Court is mindful that relief under Rule 60(b) requires extraordinary circumstances that should be employed judiciously as a scalpel and not as a bludgeon. The Joint Movants have not carried

- 10 -
13.03.07 Buerge Stay Order.wpd
Case 11-20325    Doc# 243    Filed 03/07/13    Page 10 of 16

their burdens to demonstrate that they have satisfied the prerequisites for relief and have not established good cause for this Court to grant relief from its prior judgment. Viewed in the light of all facts, the alleged newly discovered evidence does not compel granting the Movants' joint motions. Even if this Court were aware at the trial of the possible future sale of the BBI stock interest, this would not have changed the Court's decision, because it would not change what Prime brought to the table to purchase the stock and would not change that BBI was ultimately of inconsequential value to the estate. At some point, after a lengthy sale process, if the Trustee does not carry his requisite burden under §363 and approval of the sale is denied, and the Debtor establishes that the stock is ultimately of inconsequential value to the estate, then abandonment of the stock to the Debtor is warranted. Although there is frequently litigation attendant to a Chapter 7 trustee's administration of a bankruptcy estate, the trustee is a liquidator and not a litigator. His role is to expeditiously administer the assets of the estate and to hopefully generate a meaningful distribution to unsecured claimants. This has proved an elusive and unattainable goal in the case *sub judice*.

## II.     Joint Motion for Stay of Judgment.

### A.     Standards of Law.

A motion for stay of a judgment or order of the bankruptcy court pending appeal is governed by Federal Rule of Bankruptcy Procedure 8005. A ruling on the motion is a discretionary matter for the bankruptcy court:

> [T]he bankruptcy judge *may* suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.[23]

---

[23] Emphasis added.

The guiding principle of the Rule is to "protect the rights of all parties in interest."[24]

The bankruptcy court applies a four-factor test to a motion for stay: (1) whether the party seeking the stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[25] "The first two factors of the traditional standard are the most critical."[26] The moving party bears the burden of establishing the factors in order to show "that the circumstances justify an exercise of that discretion."[27]

The motion is properly addressed to the bankruptcy court, because per Bankruptcy Rule 8005, a motion for stay pending appeal should be filed with the BAP only after the bankruptcy court has denied the motion.[28] There is no timing requirement within Rule 8005.

**B.  Analysis.**

As Joint Movants, the Trustee and Prime bear the burden of establishing that the four factors enumerated above lie in their favor. The Joint Movants request that pending the outcome of Joint Movants' motion for relief from judgment that this Court stay its order dated September 6, 2012.[29] The Joint Movants' request for stay is thus limited in time until this Court rules on their Rule 60(b) motion; since the Court rules on and denies such motion herein, the request for stay is technically moot. However, even if the Joint Movants requested a stay of the judgment pending appeal, this Court denies such request for the reasons set out below.

---

[24] FED. R. BANK. P. 8005.
[25] *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (discussing the traditional "standard for a stay"); *see also Lang v. Lang (In re Lang)*, 414 F.3d 1191, 1201 (10th Cir. 2005).
[26] *Nken*, 556 U.S. at 434.
[27] *Id.* at 433–34.
[28] *See also* 10th Cir. BAP L.R. 8005-1.
[29] Doc. No. 220.

- 12 -
13.03.07 Buerge Stay Order.wpd
Case 11-20325    Doc# 243    Filed 03/07/13    Page 12 of 16

Regarding the first factor, likelihood of success on the merits, the Trustee and Prime argue that they only seek a stay long enough for the Bankruptcy Court to rule on their joint motion for relief from judgment under Rule 60(b). They argue that they are "very likely" to succeed on their motion for relief from judgment because of the newly discovered evidenced outlined therein.

Regarding the second factor, whether the applicant will be irreparably harmed absent a stay, the Trustee and Prime argue that absent a stay, the Debtor may take action following the BBI sale to render moot the appeal of the Bankruptcy Court's order. The Joint Movants cite *Manges v. Seattle-First Nat'l Bank (Matter of Manges)*[30] in support. In *Manges*, the Fifth Circuit discussed the importance of seeking stay relief in the bankruptcy court, because the bankruptcy context often involves matters where "effective judicial relief is no longer available."[31] The *Manges* court stressed that an appellant should diligently seek a stay in the bankruptcy court to prevent its appeal from becoming moot, and, therefore, subject to dismissal on appeal.[32] It is questionable whether the Joint Movants complied with this duty to act diligently in that the Joint Motion for Stay of Judgment was filed more than 90 days after this Court's Judgment.[33]

Regarding the third factor, whether issuance of the stay will substantially injure the other parties interested in the proceeding, the Trustee and Prime argue there will be *no* harm to the Debtor, because the stay will maintain the status quo that currently exists between the parties and the Joint Movants are not attempting to prevent or stay the sale of the stock to Pinnacle.

Regarding the fourth factor, where the public interest lies, the Trustee and Prime argue

---

[30] 29 F.3d 1034, 1039 (5th Cir. 1994).
[31] *Id.*
[32] *Id.* at 1039–40.
[33] The Court's judgment was filed on September 6, 2012, and the joint motion for stay of judgment was filed on December 12, 2012. *See* Doc. Nos. 203 and 220, respectively.

- 13 -
13.03.07 Buerge Stay Order.wpd
Case 11-20325    Doc# 243    Filed 03/07/13    Page 13 of 16

again that there will be no harm, because a stay will maintain the status quo. The Trustee and Prime also argue that a stay will maximize judicial efficiency because the current judgment is subject to reconsideration or reversal based on the newly discovered evidence.

The Joint Movants have not carried their burdens to show that a stay of the judgment being appealed is necessary to protect the rights of all parties in interest to this case. It is not proper for this Court to issue a stay as to either the order of abandonment or as to the Trustee's motion to sell. The stock held in BBI has been sold. The Court concludes that there is no likelihood of success on appeal of the judgment. Under the Rule 60(b) analysis above, the newly discovered evidence would probably not produce a different result at trial on either the Trustee's motion to sell or the Debtor's motion to abandon. Regarding irreparable harm absent a stay, the Joint Movants allege only that a stay is necessary to preserve their appeal, without stating how or why this is the case, so this factor is particularly weak.[34] The public interest lies in expeditiously and finally resolving the parties' disputes, rather than retrial and delay,[35] and the denial of a stay here properly balances the interests of the parties. This is particularly the case in bankruptcy proceedings which are designed to provide the unfortunate but honest debtor relief. Despite numerous extensions, Prime did not file a complaint to determine dischargeability under §523(a); no party in interest has filed an objection to discharge under §727(a) or a motion to dismiss under §707. A recalcitrant creditor should not be allowed to further delay the Debtor's fresh start, especially after the Debtor has battled the same creditor in related Chapter 11 cases.

---

[34] *Sunflower Racing, Inc. v. Mid-Continent Racing & Gaming Co. (In re Sunflower Racing, Inc.)*, 223 B.R. 222, 225 (D. Kan. 1998) ("[T]he fact that an appeal may be rendered moot without a stay does not itself constitute irreparable harm.").

[35] *Jarboe v. Yukon Nat'l Bank (In re Porter)*, 54 B.R. 81, 82 (Bankr. N.D. Okla. 1985) ("The public interest, though difficult to measure in a case involving primarily private rights, is generally served by moving forward.").

A stay pending appeal in the case *sub judice* is contrary to the policies underlying the Bankruptcy Code and jurisprudence.

### Document Filed Under Seal

Debtor filed a motion for leave to file an affidavit of Aaron Buerge under seal.[36] This motion was filed on December 19, 2012. On December 27, 2012, this Court entered an order granting said motion.[37] The Trustee and Prime filed a joint motion to modify said order.[38] Debtor objected to the Trustee and Prime's joint motion.[39] The Debtor does not wish to disclose the contents of the document, which is an affidavit executed by the Debtor; however, if counsel for the Joint Movants are unable to review the sealed document, then it is impossible for the Joint Movants to respond to the sealed document. Debtor may not "have his cake and eat it too"; the Court has reviewed the affidavit and finds that the contents thereof shall remain under seal. The Court shall not consider the affidavit or any information contained therein in these proceedings. A separate order shall issue that denies the Trustee and Prime's joint motion to amend order.

IT IS THEREFORE ORDERED that the Trustee and Prime's Joint Motion for Relief from final orders under Rule 60(b)(2), (3) and (6) and for an indicative ruling under Rule 61.1 is denied.

IT IS FURTHER ORDERED that the Joint Motion for a Stay of Judgment is denied.

###

---

[36] Doc. No. 225.
[37] Doc. No. 227.
[38] Doc. No. 233.
[39] Doc. No. 235.

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS